**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**


**ANTONIO WELCH,**

        **Petitioner,**

**v.**                                    **Case No:  6:15-cv-29-Orl-37GJK**

**SECRETARY, FLORIDA**
**DEPARTMENT OF CORRECTIONS**
**and ATTORNEY GENERAL, STATE**
**OF FLORIDA,**

        **Respondents.**
                                            /

## ORDER

This cause is before the Court on the Petition for Writ of Habeas Corpus ("Petition," Doc. 1) filed by Petitioner pursuant to 28 U.S.C. § 2254.  Respondents filed a Response to Petition ("Response," Doc. 5) in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts*. Petitioner filed a Reply (Doc. 9) to the Response. For the reasons set forth herein, the Petition is denied.

### I.    PROCEDURAL BACKGROUND

The State Attorney of the Ninth Judicial Circuit charged Petitioner and another individual in a six-count information in Orange County, Florida with the commission of various crimes.  Petitioner was charged in counts one, two, three, four, and six: burglary of a dwelling with an assault or battery (count one), attempted second degree murder (count two), robbery with a firearm (count three), aggravated battery with a deadly weapon causing great bodily harm (count four), and third degree grand theft with

a firearm (count six).  (Doc. 5-2 at 11-14).   A jury found Petitioner guilty of the lesser-included offense of burglary of a dwelling with a firearm as to count one, not guilty as to count two, guilty as to count three, not guilty as to count four, and guilty as to count six. (Doc. 5-2 at 34-38).   The State subsequently dismissed count six.  (Doc. 5-1 at 45). The trial court adjudicated Petitioner guilty of burglary of a dwelling with a firearm (count one) and robbery with a firearm (count three) and sentenced him to life imprisonment. (*Id*. at 77-84).

Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal ("Fifth DCA"), which affirmed *per curiam*.   (Doc. 5-10 at 69).   The United States Supreme Court denied Petitioner's petition for a writ of certiorari.  (*Id*. at 96).  Petitioner then filed a petition for writ of habeas corpus, which the Fifth DCA denied.  (*Id*. at 98-106; Doc. 5-11 at 27).

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, which the trial court denied.  (Doc. 5-11 at 29-55, 91; Doc. 5-12 at 1-11).  Petitioner appealed the denial, and the Fifth DCA affirmed the denial *per curiam*.  (Doc. 5-13 at 34).

## II.   LEGAL STANDARDS

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."  *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1]  *Id.*

---

[1] In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court.  *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear

## B.  Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id.* at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.* at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

---

U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

[2] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.    ANALYSIS

#### A.    Claim One

Petitioner alleges that the trial court improperly limited counsel's *voir dire* of prospective jurors and closing argument.  (Doc. 1 at 3).  He states that the trial court restricted his attempt to determine "whether State's witnesses may lie or be mistaken about the testimony they present" and "whether innocent people are sometimes convicted of crimes." (*Id.*).  This claim was raised on direct appeal.

The record reflects that the trial court sustained the State's first two objections, which related to the "phraseology" of the questions.  (Doc. 5-4 at   6-7).  The trial court sustained the State's third objection to Petitioner's entire line of questions regarding whether innocent people can be convicted of crimes.  (*Id.* at 8).  The trial court

5

sustained the last objection to Petitioner's question on how people being helped by the Innocence Project "got into the situation they were in." (*Id.* at 9-10).

An examination of the record reveals that the trial court provided Petitioner with plenty of latitude to question the prospective jurors.   Petitioner was not limited in his questioning of the prospective jurors on any bias, opinion, or prejudice that would have affected or controlled the fair determination by the prospective juror of the issues to be tried.  *See Ritter v. Jimenez*, 343 So. 2d 659, 661 (Fla. 3d DCA 1977) ("The primary purpose of voir dire is to determine whether the juror is qualified and will be fair and impartial, free from all bias, prejudice or interest in the cause being tried."); s*ee also Somerville v. Ahuja*, 902 So. 2d 930, 935 (Fla. 5th DCA 2005) ("A juror should be able to set aside any bias or prejudice and assure the court and the parties that they can render an impartial verdict based on the evidence submitted and the law announced by the court.").

Petitioner also mentions cursorily that the trial court erred by limiting his counsel's closing argument.   However, the record reflects that the trial court merely sustained the prosecutor's objections when Petitioner's counsel was attempting to argue matters not in evidence.  (Doc. 5-7 at 158-59).   Specifically, the trial court told Petitioner to "stay within the four corners of the trial." (*Id.* at 159).   The trial court did not improperly limit Petitioner's closing argument.

The Court finds that this claim is without merit.   As such, the state court's rejection of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based upon an

6

unreasonable determination of the facts in light of the evidence presented. Consequently, claim one is denied.

### B.    Claim Two

Petitioner argues that the trial court allowed an impermissibly suggestive in-court identification.  (Doc. 1 at 4).  He claims that the trial court "was required to exclude the in-court identification testimony of State's witness Elaine Mays, as the pretrial identification of Petitioner was obtained by a suggestive procedure."  (*Id.*).  This claim was raised in Petitioner's direct appeal.

"An eyewitness identification may constitute a due process violation if the identification procedures were unnecessarily suggestive and conducive to irreparable mistaken identification."  *Irwin v. McDonough*, 243 F. App'x 486, 492 (11th Cir. 2007) (quotation and citations omitted).  The Supreme Court has identified several factors to consider in evaluating "the likelihood of misidentification," including: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.   *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

First, Mays testified that she saw Petitioner and two other individuals exit a black car with black tinted windows and enter Janice Young's house and that she (Mays) was standing by the door when all three exited the home and beat the victim. (Doc. 5-5 at 70, 81-81).  Second, the evidence indicates that Mays was paying close attention to

what she was observing given the detail of her description and her testimony that she was standing by the door when the three assailants exited the home and beat the victim.  Third, no discrepancy in the victim's description of Petitioner was established at trial.  Fourth, the witness repeatedly testified that Petitioner was one of the individuals involved.  (*Id.* at 83-84).  Fifth, the witness did not identify Petitioner until the trial, approximately 12 months after the crime.  (*Id.* at 84).

Based on the totality of the circumstances, the Court concludes that it was not objectively unreasonable for the state court to find that Mays' in-court identification of Petitioner was reliable. Therefore, Petitioner failed to demonstrate that the state court's denial of his due process claim was an "unreasonable application of" the Supreme Court's precedent addressing the scope of due process protection from the admission of identification testimony.  As a result, claim two is denied.[3]

## C.    Claim Three

Petitioner argues that counsel was ineffective for failing to inform him of a defense strategy.  In particular, he states that counsel "did not pursue an available coherent theory or defense that was more logical to the facts of [his] case, including but not limited to the independent act defense."  (Doc. 9 at 9).  This claim was raised in Petitioner's Rule 3.850 motion and was denied because there was no showing that counsel acted deficiently.

---

[3] Petitioner also mentions that there was a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), because counsel "was not notified that pre-trial identification was employed by the State."  (Doc. 9 at 5).  However, Petitioner has not demonstrated that the State withheld evidence.   Moreover, counsel conducted a thorough cross-examination regarding Mays' in-court identification.

The decision of whether to pursue a defense is a strategic decision.  *See Franza v. Stinson*, 58 F.Supp.2d 124, 155 (S.D.N.Y. 1999) (finding that "the decision whether to pursue a particular defense is a tactical choice which does not rise to [the] level of a constitutional violation.").   The Court notes that there was overwhelming evidence presented by the State with regard to Petitioner's guilt. Petitioner has presented no facts or evidence that demonstrate, with any degree of certainty, that a jury would have found him innocent of the charges based on any proposed defense.  Since any other defenses were, at best, only a theoretical possibility, counsel was not obligated to pursue these defenses.  *Cf. United States v. Sewards*, 879 F. Supp. 502 (E.D. Pa. 1995) (since the intoxication defense was at best only a theoretical possibility, the petitioner's attorney had been under no obligation to inform his client of it).

Further, Petitioner has not pointed to any specific act his attorney should have performed to prepare the defense better or to what would have been achieved by additional discussions about the case.   In this case, given the weight of evidence against Petitioner, it is highly unlikely that additional communication between Petitioner and his counsel would have changed the trial outcome.

Petitioner has failed to demonstrate that counsel acted deficiently or that he sustained prejudice with regard to this matter.   As such, Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, the Court denies claim three.

### D.     Claim Four

Petitioner states that counsel was ineffective for failing to sever his trial from his co-defendant, George Mosby.  (Doc. 1 at 7).  He claims that Mosby's lengthy criminal history became known to the jury through Mosby's testimony, which prejudiced the jury's opinion of Petitioner.  This claim was raised in Petitioner's Rule 3.850 motion and was denied because there was no showing of prejudice.

Petitioner and Mosby were charged with robbing, beating, and attempting to murder the victim, Eugene Smith.  (Doc. 5-10 at 18).  The crimes occurred at the home of Janice Young, where several people were gathered.  (*Id.*).  Smith identified Petitioner and Mosby as the perpetrators.  (*Id.* at 19).  Mosby denied going to Young's house that day.  (*Id.*).  Petitioner stated that he was at Young's house that day, that he (Petitioner) was not involved in the crimes, that Mosby was not at that house at all that day, and that Mosby was not one of the perpetrators.  (*Id.* at 23-24.).

The testimony of Petitioner and Mosby did not conflict.  Mosby denied being at the scene of the crime, and Petitioner admitted being at the scene but testified that Mosby was not at the house and was not one of the perpetrators.

Moreover, as to the evidence regarding Mosby's criminal history, the jury only heard that he had been previously convicted of a felony two times.  (Doc. 5-7 at 58). There was no further discussion of the matter.

Apart from vague and unsupported assertions, Petitioner presents nothing to demonstrate that his counsel's failure to file a motion to sever was outside "the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, as the

10

decision not to seek a severance generally falls within the range of reasonable trial strategy.  *See Barrientes v. Johnson*, 221 F.3d 741, 775–76 (5th Cir. 2000). Here, Petitioner provides nothing to rebut the presumption that the decision to try him with his co-defendant was a matter of reasonable trial strategy and fails to prove either prong of the *Strickland* test.

Moreover, Petitioner has not pointed to any evidence presented solely against his co-defendants that prejudiced his defense.  In addition, even assuming *arguendo* that the Court would have granted Petitioner's motion to sever, Petitioner has failed to prove that a separate trial would have resulted in a different verdict.  The State presented overwhelming evidence of Petitioner's guilt, and he has failed to cite to anything in the record to indicate that he is innocent.

Petitioner has failed to demonstrate that counsel acted deficiently or that he sustained prejudice with regard to this matter.  As such, Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, the Court denies claim four.

### E.    Claim Five

Petitioner states that counsel was ineffective for failing to file a motion for arrest of judgment based on an inconsistency of the verdicts.  (Doc. 1 at 10).  In particular, he argues that the jury verdicts were inconsistent "when the jury found him not-guilty of one count (firearm) which negated an element on another count (firearm), that was

11

necessary for a conviction." (*Id.* at 11).  He also mentions that Mosby was found guilty as to count four (aggravated battery), while he was acquitted of the charge.  (*Id.*).  This claim was raised in Petitioner's Rule 3.850 motion and was denied because the verdicts were not inconsistent.

As a general rule, Florida permits inconsistent verdicts.  *State v. Powell*, 674 So. 2d 731, 732–33 (Fla. 1996). The sole exception is the "true" inconsistent verdict exception, which "comes into play when verdicts against one defendant on legally interlocking charges are truly inconsistent." *Brown v. State*, 959 So. 2d 218, 220 (Fla. 2007).  "[T]rue inconsistent verdicts are those in which an acquittal on one count negates a necessary element for conviction on another count."  *Id.*

Petitioner's acquittal on the battery charge had no impact on the burglary and robbery charges because the crimes did not depend on identical elements. Petitioner could have committed burglary and robbery without committing a battery.    Moreover, the jury's decision to convict Mosby on the battery charge, and not Petitioner, could have been the result of a number of factors.  For example, the victim testified that Mosby was the primary assailant and that Petitioner punched him only once.  As such, Petitioner has not shown that the verdicts were inconsistent.

Under the circumstances, there has been no showing that counsel acted deficiently with regard to this matter or that Petitioner sustained prejudice.  Petitioner has failed to demonstrate that any claim adjudicated on the merits in the state court resulted in a decision that was unreasonable in light of the evidence; or contrary to, or

involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Consequently, claim five is denied.

###### E. Claim Six

Petitioner states that counsel was ineffective for failing to move to dismiss the burglary charge because "the evidence against him was not sufficient to support his conviction for burglary." (Doc. 1 at 12). According to Petitioner, he was an "invited guest" at Young's home, and the "invitation was never withdrawn." (*Id.*). This claim was raised in Petitioner's Rule 3.850 motion and was denied because "a defendant may be convicted of a burglary where he enters a premises open to the public or he has been invited, but then remains on the premises with the intent to commit a felony therein." (Doc. 5-12 at 5).

Under Florida law, "for a burglary to occur, it is not necessary for the licensed or invited person to remain in the dwelling, structure or conveyance surreptitiously." § 810.015(1), Fla. Stat. Therefore, counsel was not ineffective for failing to raise this issue, and there has been no showing of prejudice.

As such, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim, and claim six is denied.

###### F. Claim Seven

Petitioner argues that counsel was ineffective for failing to investigate Michael Ruthland as a witness. (Doc. 1 at 14). He states that Ruthland would have testified that Petitioner "did not participate in the robbery or assault of the victim" and that Petitioner

13

"did not assist Mosby an [sic] in committing any crime . . . ." (*Id.* at 14). This claim was raised in Petitioner's Rule 3.850 motion and was denied because "[t]his alleged testimony would have run counter to the Defendant's own testimony that he took no action whatsoever other than to run away." (Doc. 5-12 at 6).

Petitioner testified at trial that he witnessed individuals involved in a "struggle." (Doc. 5-7 at 74-75). However, Petitioner stated that he did not know the individuals and that he was not involved in the incident. (*Id.* at 74). Once he saw the "scuffle," Petitioner stated "I seen it was my chance to leave, so I took off running." (*Id.* at 76). Petitioner reiterated that "when I seen them come in and they started struggling, I took off." (*Id.* at 79). Petitioner stated that he did not punch the victim and that he was not involved in the robbery. (*Id.*).

The law does not favor ineffective assistance of counsel claims based on complaints of uncalled witnesses. *See Gasanova v. United States*, 2007 WL 2815696, at *9 (W.D. Tex. September 6, 2007) (citations omitted) (footnotes omitted). The presentation of witness testimony is essentially strategy, and it is, therefore, within trial counsel's domain. *Id.* Mere speculation as to the testimony an uncalled witness would have given is too uncertain. *Id.* A petitioner cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim. *Id.* In the case of an uncalled witness, at the very least, the petitioner must submit an affidavit from the uncalled witness stating the testimony he or she would have given had they been called at trial. *Id.* To show prejudice, the petitioner must

show not only that the uncalled witness's testimony would have been favorable, but also

that the witness would have testified at trial. *Id.*

Petitioner has failed to advance a persuasive argument that trial counsel's

decision not to investigate or call this witness was unreasonable or that this decision

can be construed as conduct outside the wide range of professional representation.

Further, Petitioner fails to meet the prejudice prong of *Strickland* since he has not

demonstrated that the testimony of this witness would have been favorable or that this

witness would have actually testified at trial.  As such, Petitioner fails to meet his burden

of proving that the state court unreasonably applied controlling Supreme Court

precedent or unreasonably determined the facts in denying relief on this claim.  Thus,

claim seven is denied.

### G.     Claim Eight

Petitioner states that "counsel was ineffective for failing to render effective advice

and object to the principal instruction." (Doc. 1 at 15).  He argues that "there was no

evidence placed before the jury that [Petitioner] committed the allege[d] crimes, but the

evidence established the co-defendant possessed the firearms and committed the

crimes." (*Id.* at 16).  The claim was raised in Petitioner's Rule 3.850 motion and was

denied because "[t]here is no requirement that an information define which co-

defendant is the principal." (Doc. 5-12 at 7).

Under Florida law, "it is immaterial whether [a defendant] was expressly charged

as a principal, so long as there was proof he was guilty of one of the acts denounced in

the statute." *Lopez v. State*, 833 So. 2d 283, 284 (Fla. 2d DCA 2002).  The law of

principals allows Petitioner "to be convicted of the main offenses regardless of whether he personally possessed a firearm, even if he could not be given a minimum mandatory sentence." *Id.*

As a result, counsel did not act deficiently with regard to this matter, and there has been no showing of prejudice.  Consequently, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim.  Thus, claim eight is denied.

### H.   Claim Nine

Petitioner states that "counsel was ineffective for failing to properly argue during his voir dire his theory of defense." (Doc. 1 at 17).  This claim was raised in Petitioner's Rule 3.850 motion and was denied because there was no showing that counsel acted deficiently.

*Voir dire* in this case was extensive, and Petitioner's counsel thoroughly questioned the jurors.  Petitioner has not shown that an unqualified or biased juror ended up on the panel due to a deficient *voir dire* by counsel.  Moreover, Petitioner has not shown that any juror expressed any unwillingness to follow the law or make a judgment based solely on the evidence presented.

As a result, counsel did not act deficiently with regard to this matter, and there has been no showing of prejudice.  Consequently, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent

16

or unreasonably determined the facts in denying relief on this claim.  Thus, claim nine is denied.

### I.      Claim Ten

Petitioner argues that counsel was ineffective for misadvising him during plea negotiations and for failing to properly convey that State's plea offer.  According to Petitioner, counsel discussed a "six-year offer" from the State but told him that he would have to testify against his co-Defendant.  (Doc. 1 at 19).  However, Petitioner claims that he "discovered later, after all plea negotiation[s] were closed, the state never required Petitioner to testify regarding his Co-defendant or any third party."  (*Id.*).  This claim was raised in Petitioner's Rule 3.850 motion and was denied because Petitioner had not shown that the State "did drop this requirement."  (Doc. 5-12 at 8).

At the beginning of trial, the prosecutor informed the trial court that there had been "extensive discussion regarding a plea offer on Mr. Welch's case.  Originally we discussed seven years, and I believe we got as low as five years, if he would identify the third  . . . person that actually fired the gun, and testify with truthful testimony.  Mr. Welch has declined that offer."  (Doc. 5-3 at 47).  After jury selection, the prosecutor informed the trial court that the State had "reluctantly" agreed to a plea offer of six years.  (*Id.* at 138).  The prosecutor stated that Petitioner had accepted the offer "last night" but that Petitioner changed his mind.  (*Id.* at 139).  Petitioner then informed the trial court that he preferred to go to trial.  (*Id.*).

Although Petitioner argues that the State no longer wanted him to testify against his fellow perpetrators, this argument is speculative and contains no specifics. Petitioner

does not indicate who made the plea offer that no longer required him to testify, when it was tendered, what conditions were attached to it, or how he became aware of it.  The State had always insisted that it wanted Petitioner to testify against his co-defendant and to identify the other perpetrator.  There is no indication from the record, and Petitioner provides no evidence, that the State no longer required Petitioner to testify.

As a result, counsel did not act deficiently with regard to this matter, and there has been no showing of prejudice.  Consequently, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim.  Thus, claim ten is denied.

### I.      Claim Eleven

Petitioner states that "counsel was ineffective for failing to object to the improper use of convictions on a scoresheet and the assessment of victim's injury points." (Doc. 1 at 20).  This claim was raised in Petitioner's Rule 3.850 motion and was denied because the alleged scoresheet error did not affect the sentence imposed and the victim injury points were not imposed in error.

At sentencing, the issue of the scoresheet error was discussed.  (Doc. 5-1 at 42-44).  The trial court stated that it would not consider the crimes for which Petitioner had not been convicted.  (*Id.* at 44).  The record demonstrates that the trial court would have imposed the same sentence if the State had not erred in listing these charges.  (*Id*).

As to the victim injury points, there is no requirement under Florida law that the jury make a finding as to the level of victim injury points when the defendant is not

18

sentenced beyond the statutory maximum.   The imposition of victim injury points is within the discretion of the trial court.   *Ely v. State*, 719 So. 2d 11, 13 (Fla. 2d DCA 1998).   Here, the victim testified as to the extensive nature of his injuries.   (Doc. 5-4 at 153-54).   The trial court did not err in imposing the victim injury points.

As a result, counsel did not act deficiently with regard to this matter, and there has been no showing of prejudice.   Consequently, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim.   Thus, claim eleven is denied.

Allegations not specifically addressed herein are without merit.

## IV.   CERTIFICATE OF APPEALABILITY

This Court should grant an application for a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). However, the petitioner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner fails to demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner fails to make a substantial showing of the denial of a constitutional right.

Thus, the Court will deny Petitioner a certificate of appealability.

### V.   CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1.    The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.    This case is **DISMISSED with prejudice**.

3.    Petitioner is **DENIED** a certificate of appealability in this case.

4.    The Clerk of the Court is directed to enter judgment in favor of Respondents and to close this case.

   **DONE** and **ORDERED** in Orlando, Florida on June 2nd, 2016.

ROY B. DALTON JR.
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party
OrlP-2 6/2

20